BEATRICE SOKOL, Respondent, *v.* DUDLEY HARDE and Others, Copartners Doing Business under the Firm Name and Style of HARDE & SHARP, Appellants, Impleaded with DUDLEY HARDE and Others, Copartners Doing Business under the Firm Name and Style of HARDE & ELLIS, Defendants.

First Department, March 27, 1936.

*Lee H. Burton* of counsel [*Ira Skutch* with him on the brief; *Cutting, Phillips & Hall,* attorneys, for Harde and others, and *Clark, Carr & Ellis,* attorneys, for Robinson], for the appellants.

*George S. Mittendorf* of counsel [*Arnold Furst* with him on the brief; *Mitchell, Taylor, Capron & Marsh,* attorneys], for the respondent.

TOWNLEY, J. Plaintiff was a customer of the defendant brokerage firm of Harde & Sharp and sued for damages resulting from the alleged conversion of her securities on October 25, 1929. The defendants denied the conversion and counterclaimed for the balance due. It is conceded that judgment should be directed on the counterclaim if plaintiff has not established the conversion.

This margin account was opened in June, 1929, and was managed by defendants' customer's man, Gallagher, on orders given by the plaintiff. The trouble between the parties commenced on September 25, 1929, when Gallagher told the plaintiff that he had bought 100 shares of stock of Montgomery Ward. As soon as she was informed of this, plaintiff repudiated the purchase and declared that she had instructed Gallagher not to buy Montgomery Ward until she had sold 100 shares of Radio stock which she had in her account. The next morning plaintiff went to the defendants' main office and protested to a junior partner, who told her not to worry about it, and indicated that she had rightfully repudiated the sale. At that time he asked her to sign a customer's card, but she refused unless defendants agreed not to call upon her for more margin. There was some evidence that at this time the customer indicated that she would carry the Montgomery Ward stock to protect Gallagher in his job provided she was not asked for more margin. However, no such promise was ever made to her and defendants did not drop the Montgomery Ward purchase from the plaintiff's account.

Matters drifted until October 25, 1929, at which time plaintiff received a demand for additional margin. She thereupon consulted counsel, who, with her authority, on October twenty-fifth wrote to the defendants as follows:

" Miss Beatrice Sokol, of 307 Fifth Avenue, New York City, has consulted us with regard to your letter of October 24, 1929.

" According to Miss Sokol you have in your possession belonging to her twenty-two (22) shares of New York Central, twenty (20) shares of Pennsylvania Railroad, ten (10) shares of American Tobacco, $4,600 in cash, and one hundred (100) shares of Radio Corporation of America, and one hundred (100) shares of the preferred stock of the Chicago, Milwaukee, St. Paul and Minneapolis, which last two stocks were purchased on margin. It seems to us that these two lots of stocks are amply margined.

" We understand that you claim to have purchased for Miss Sokol's account one hundred (100) shares of Montgomery Ward. Miss Sokol states that she never authorized the purchase of that stock on her behalf, and we do not recognize your claim that she purchased it.

"Miss Sokol is prepared at any time to take up the securities which you hold on her behalf (which does not include, however, the Montgomery Ward which was purchased without authority) if you will let her know the amount required to do so. If you should make any unauthorized sale of any part of our client's property we will hold you strictly responsible therefor.

"We herewith return to you, unsigned, the paper which you handed to Miss Sokol, as she no longer has confidence in your handling of her affairs."

On the trial it was clearly stated that the plaintiff was relying upon this letter as being a demand coupled with a tender for such stock as was rightfully owned by the customer and that the failure to deliver the stock constitutes the conversion claimed. On October twenty-sixth plaintiff owed more than $10,000 on the account without the Montgomery Ward purchase. No formal tender of any money was ever made. No later demand for delivery of the securities was made.

We hold that the expressions in the letter are not equivalent either to a demand or a tender. There may be cases in which it is unnecessary to make a formal tender because it is known in advance that it will be refused. But assuming that the conduct of the defendants was such as to constitute a waiver of the necessity for a tender, the language used in this letter was not that of a demand for the delivery of any securities. Defendants up to the middle of the trial took the position that they were authorized to purchase the Montgomery Ward stock for the plaintiff's account. The claim was withdrawn at the trial owing to the admission of certain evidence. The situation, therefore, was one in which an excessive lien was asserted on securities, the beneficial title of which was in the plaintiff. To put the defendants in default when they were asserting an excessive lien, the proper amount of money due should have been offered or at least it must be shown that the plaintiff had the means to take up the stock and that a clear waiver of the necessity for a tender was evidenced by the conduct of the defendants. There is no such evidence on this record.

Plaintiff's conduct in relation to this account after the date of the alleged conversion negatives any claim that she acknowledged or considered that the defendants had exercised any acts of dominion over the shares which she rightfully claimed were hers. Statements of account were rendered as usual by the brokers up to December, 1930, and these statements were acknowledged in many communications written by counsel to defendants. The only criticism of the statements was that they should not include the

Montgomery Ward stock transaction. In the letter of October twenty-fifth itself, defendants were forbidden to make any unauthorized sale of any part of the account. On the following November thirtieth counsel wrote that if plaintiff's account was sold out by reason of the inclusion of the Montgomery Ward stock, suit for damages would be brought. On January eighth defendants were told that they would be held strictly responsible for any unauthorized dealings with any of the plaintiff's securities. A similar letter was written on January 15, 1930, and on February 6, 1930, there was a further repudiation of the Montgomery Ward transaction. Thereafter fourteen credit memoranda were sent by defendants covering dividends on various securities. On December 20, 1929, plaintiff had instructed the brokers to sell her rights of certain Pennsylvania Railroad Company stock in the account. These instructions they carried out. Matters went on without any further incidents until February 16, 1932, when the summons and complaint in this action were served, demanding the value of the securities on October 25, 1929, on the theory of conversion. Even on the trial, however, plaintiff insisted that the securities belonged to her and that the defendants were holding them for her.

On these facts, it is quite impossible to take the position that there was any evidence to support the claim of conversion on October twenty-fifth. It is true that the defendants were asserting an excessive lien on the account, and under a proper tender and demand, plaintiff could have treated such action as a conversion of her property. But she has never acknowledged that any acts of the defendants constituted acts of dominion over the property such as divested her of her right to claim that all the shares except the Montgomery Ward were rightfully hers. In short, if there was any conversion on October twenty-fifth the conversion was as matter of law waived and it was error over objection to leave the case to the jury merely on the question of whether there was any need for tender on October twenty-fifth. Whatever one might think of the situation as developed by the letter of October twenty-fifth, we hold that, as matter of law, plaintiff's subsequent acts constituted a waiver of any claims arising from that letter outside of the instruction that under no consideration should any of the stock be sold without authority. This instruction was carried out to the letter. The stock was carried for more than two years at a very great loss to the plaintiff but that loss could have been stopped at any time by her giving instructions for the sale of the securities. The plaintiff has failed to establish any cause of action.

The judgment should be reversed, with costs, and the complaint dismissed, and judgment should be directed on the counterclaim for the amount prayed for, with costs.

MARTIN, P. J., MCAVOY and O'MALLEY, JJ., concur; GLENNON, J., dissents and votes for affirmance.

GLENNON, J. (dissenting). I dissent from the views of the court which are set forth in the majority opinion.

We should not overlook the fact that on November fifteenth the attorneys for the defendants replied to plaintiff's communications which were dated October 25, 1929, and November 8, 1929, and in a letter dated November 29, 1929, wrote as follows:

" *November* 29th, 1929.

" TAYLOR, BLANC, CAPRON & MARSH, Esqs.,
    " 43 Exchange Place,
        " New York City.

" DEAR SIRS: The present will acknowledge receipt of your letter of November 21st, 1929, relative to the claim of Miss Beatrice Sokol against Messrs. Harde & Sharp, which indicates that she now claims that the order for 100 shares of Montgomery Ward was given, but given contingently upon the sale of certain stock of the Radio Corporation.

" Our investigation into the facts indicates that your client definitely gave orders for the purchase of 100 shares of Montgomery Ward and subsequently confirmed the purchase. As suggested in your letter of October 25th, 1929, will you please have your client make arrangements to take up all of the stock held by Harde & Sharp and close her account.

" As her account is very much under-margined at the present time and has been for over a month, Harde & Sharp will be compelled to take steps for their protection by selling out the account unless it is promptly margined or taken up by Miss Sokol.

" Very truly yours,
        " CUTTING, PHILLIPS & HALL.
" WBH:KL."

It will be noted that the position taken by the attorneys in their letter of November twenty-ninth is entirely different from that which is to be found in the communication sent by the defendants to plaintiff on November thirtieth wherein the Montgomery Ward stock is referred to with the statement " we are not carrying this stock in your account." In subsequent communications, however, the defendants reversed their position, and maintained that the purchase was authorized. Upon the trial it was in effect conceded that an error was made.

It would have been a useless formality for the plaintiff to have made a cash tender of the amount due under the circumstances,

since the defendants claimed a brokers' lien on the entire account including the Montgomery Ward stock.

I believe a question of fact was presented for the determination of the jury, and, consequently, I vote to affirm.

Judgment reversed, with costs, the complaint dismissed and judgment directed on the counterclaim for the amount prayed for, with costs.